UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN LUCKETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 14-cv-6089 |
| ) | |
| v. ) | |
| ) | **Plaintiff Demands Trial by Jury** |
| ) | |
| COOK COUNTY SHERIFF'S OFFICE ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

NOW COMES Plaintiff, JOHN LUCKETT, by his attorneys LAD LAW GROUP, P.C, and complains as follows against Defendant COOK COUNTY SHERIFF'S OFFICE:

## PARTIES AND JURISDICTION

1. Plaintiff JOHN LUCKETT is a citizen of the United States of America, and a citizen and resident of Elmwood Park, County of Cook, Illinois.

2. Defendant COOK COUNTY SHERIFF'S OFFICE ("Sheriff's Office) is a body politic and corporate, organized under the laws of the state of Illinois, with offices located in, and doing business in the County of Cook, Illinois.

3. At all relevant times, Plaintiff was an employee of the Sheriff's Office as that term is defined in 42 U.S.C. § 12111(4).

4. At all relevant times, the Sheriff's Office was an employer as defined in 42 U.S.C. § 12111(5)(A).

5. This is an action for damages for violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et. seq., and 29 U.S.C. § 794(a), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, et seq.

6. This Court has jurisdiction to hear this Complaint pursuant to 28 U.S.C. §1331, and §1343.

## FACTS

7. Plaintiff began his employment with Defendant in approximately 1994 at the Cook County Jail, as a Correctional Officer.

8. As a Correctional Officer, Plaintiff's duties included the day to day monitoring and regulation of inmate behavior. In the performance his duties, Plaintiff had constant direct one on one contact with inmates.

9. In approximately February 2011, Plaintiff was assigned to Division 9 at the Cook County Jail, the division housing the more violent inmates.

10. In Division 9, two officers are assigned with the day to day monitoring and regulation of the behavior of approximately 40-45 inmates, each. The officers in Division 9 were often alone with inmates.

11. Plaintiff had previously worked in the Transportation Department, where officers are in the presence of approximately 50-60 other officers when dealing with inmates.

12. On or about September 20, 2012, Plaintiff was alone with an inmate, and was attacked and beaten by the inmate. Plaintiff suffered major injuries during the attack.

13. Plaintiff filed a worker's compensation action, as a result of the workplace injury, and was treated by a neurologist for his injuries sustained during the attack.

14. Plaintiff's neurological treatment was approved by Defendant, and as a part of his worker's compensation action.

15. During the course of the worker's compensation action, Plaintiff's submitted documentation to Defendant from his treating neurologist stating that Plaintiff suffered from Post Traumatic ("PTSD") Stress Disorder from the inmate attack, and that he would not release Plaintiff back to work, until Plaintiff was treated for the PTSD.

16. Plaintiff's PTSD caused him extreme fear, anxiety, stress, depression, loss of sleep, and withdrawal from family and friends. Plaintiff was fearful that if he returned to work he would again, be left alone with, and physically attacked and injured by an inmate.

17. Plaintiff requested approval be treated for the PTSD through the workman's compensation action. Defendant denied his request.

18. Instead, Defendant required Plaintiff to see its own independent neurologist for an evaluation.

19. Defendant's neurologist reported that Plaintiff had no neurological issues preventing him from returning to work, but made no evaluation or recommendation as to Plaintiff's PTSD diagnosis.

20. In approximately June 2013, Defendant ordered Plaintiff to return to work to full duty, without having received treatment for his PTSD.

21. Plaintiff objected to this demand that he early return, as his treating neurologist would not release him to work, until he received treatment for his PTSD, and Defendant had denied his request to seek psychiatric treatment.

22. In October 2013, Defendant required Plaintiff to see its own independent medical review physiatrist. Defendant's physiatrist did not treat Plaintiff for his diagnosed PTSD, but instead reported that Plaintiff was fit to return to work.

23. On approximately February 20, 2014, Plaintiff received a call from Defendant's Director of Personnel, Rosemary Nolan, demanding Plaintiff return to work.

24. Plaintiff told Nolan that he had not been treated for his PTSD, that he continued to suffer from PTSD, and at that time, requested a transitional work assignment to a low or no inmate contact position.

25. On information and belief, Plaintiff was eligible for a transitional work assignment, and could have been transferred to a position with low to no inmate contact.

26. Nolan denied Plaintiff's request for a transitional work assignment.

27. Nolan then told Plaintiff that he had to provide something from his treating physician stating that he suffered from PTSD, and needed a transitional work assignment. Plaintiff reminded Nolan that his treating had already provided this to Defendant, stating that he would not release Plaintiff to work until he received treatment for his PTSD, and in fact, he had not released Plaintiff to work.

28. Nolan continued to refuse Plaintiff's request for treatment, and for a transitional work assignment, and ordered Plaintiff to return to work.

29. On Feb. 25, 2014, Plaintiff returned to work full duty, to his same duties with one on one, direct inmate contact.

30. After Plaintiff return to work, full duty, Defendant continued to refuse Plaintiff's request for psychiatric treatment for his PTSD. In June 2014, Plaintiff began seeing his own physiatrist for treatment.

31. On June 18, 2014, Plaintiff contacted Sean Lynch, Defendant's Personnel Supervisor, and requested a transitional movement due to his PTSD.

32. Shortly thereafter, Plaintiff submitted the appropriate ADA paperwork. Defendant's Employee Relations Specialist, Sabrina Canchola contacted Plaintiff, and told him that he needed to submit a letter from his treating physician requesting a transitional work assignment.

33. On or about June 24, 2014, Plaintiff submitted documentation from his treating primary care physician to Canchola, stating that Plaintiff suffered from PTSD, and should have little to no contact with inmates.

34. Approximately one week later, Canchola informed Plaintiff that his request was denied, indicating that the denial related to the report from Defendant's independent medical review psychiatrist, returning Plaintiff to work. Canchola further stated that the only way Plaintiff's request would be considered for approval was if Plaintiff submitted documentation from his physician, stating that he was released to full duty.

35. On or about July 1, 2014, Plaintiff submitted documentation from his treating psychiatrist to Canchola, stating that Plaintiff suffered from PTSD due to a traumatic experience at work, and recommended that Plaintiff work in a different position.

36. Canchola again informed Complainant that his request was denied, and requested Plaintiff provide a release from his physician, to return him to full duty, despite the fact that Plaintiff had already returned to work full duty on February 25, 2014, outside of his treating neurologist's orders.

37. On approximately July 7, 2014, Plaintiff submitted a letter from his treating neurologist, stating that Plaintiff suffered from PTSD, and was also being treated for post concussive

syndrome, and a history of Moya Moya syndrome and status post stroke. Plaintiff's neurologist recommended Plaintiff have little to no inmate contact position, due to his neurological problems.

38. On July 23, 2014, Canchola again denied Plaintiff's request, stating that Defendant was unable to accommodate Plaintiff in current position because Plaintiff failed to provide requested medical documentation to make informed determination.

39. Defendant's proffered reason for denying Plaintiff's ADA requests was false, and designed to discriminate against Plaintiff.

40. As a result of Defendant's discriminatory actions, Plaintiff suffered, and continues to suffer severe emotional distress damages.

41. On or about April 29, 2014, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). (See Exhibit A, attached hereto).

42. On or about May 6, 2014, the EEOC issued Plaintiff a Right to Sue Letter. (See Exhibit B, attached hereto).

43. Plaintiff received that Right To Sue Letter on or about May 10, 2014.

## COUNT I

### The Americans with Disabilities Act, 42 U.S.C. § 12112 et seq.
**(Discrimination)**

44. Plaintiff repeats and realleges Paragraphs 1-43, as though fully set forth herein, as Paragraphs 1-43 of Count I of this Complaint.

45. Plaintiff had an actual and/or perceived disability. He was diagnosed with PTSD and a neurological disorder, which substantially limited him in one or more daily life activates. As a result of being attacked and beaten by an inmate, Plaintiff was depressed, unable to

6

sleep, and experienced constant fear and anxiety while at work. Plaintiff had trouble focusing, communicating, and interacting with others in and outside of work.

46. Plaintiff met Defendant's legitimate expectations. He was not written up or counseled regarding his work performance.

47. Defendant discriminated against Plaintiff in one or more of the following ways:

    a. Refused to approve Plaintiff's request for treatment during Plaintiff's worker's compensation proceeding

    b. Forced Plaintiff to return to work full duty, outside of the recommendations of his treating physician

    c. Repeatedly denied Plaintiff's request for transitional work assignment

48. Similarly-situated, non-disabled employees were treated more favorably than Plaintiff, as they were not subject to the treatment set forth in Paragraph 47.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court find that Defendant CPS violated Plaintiff's rights under the Americans with Disabilities Act, and enter a judgment in favor of Plaintiff, making the following findings and granting the following relief:

   A. That this Honorable Court find that Defendant violated Plaintiff's rights under the Americans with Disabilities Act by discriminating against Plaintiff;

   B. That this Honorable Court award Plaintiff money reasonably calculated to compensate his for all monetary, and non-monetary damages sustained as a result of the discrimination by Defendant;

   C. That this Honorable Court award pre-judgment interest and costs;

   D. That this Honorable Court award reasonable attorney's fees and costs; and

E. That this Honorable Court award such other and further relief as it may deem just and equitable.

## COUNT II

## The Americans with Disabilities Act, 42 U.S.C. § 12112 et seq.
**(Failure to Accommodate)**

49. Plaintiff repeats and realleges Paragraphs 1-48, as though fully set forth herein, as Paragraphs 1-48 of Count II of this Complaint.

50. Plaintiff had an actual and/or perceived disability. He was diagnosed with PTSD and a neurological disorder, which substantially limited him in one or more daily life activates. As a result of being attacked and beaten by an inmate, Plaintiff was depressed, unable to sleep, and experienced constant fear and anxiety while at work. Plaintiff had trouble focusing, communicating, and interacting with others in and outside of work.

51. Defendant became aware of Plaintiff's disability through Plaintiff, and repeated notifications from Plaintiff's treating physicians.

52. Plaintiff repeated requested a reasonable accommodation of a transitional work assignment, to a low to no inmate contact position, to accommodate his disability, and allow him to perform the essential functions of his job duties.

53. Defendant repeatedly denied Plaintiff's request for a reasonable accommodation, citing a false reason, that Plaintiff failed to provide documentation, as the basis for the denial.

54. Granting Plaintiff's reasonable accommodation request would not have posed any hardship on Defendant, as on information and belief, other employees applied for and were granted transitional work assignments to low to no inmate contact positions at or around the same time of Plaintiff's requests.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court find that Defendant CPS violated Plaintiff's rights under the Americans with Disabilities Act, and enter a judgment in favor of Plaintiff, making the following findings and granting the following relief:

- A. That this Honorable Court find that Defendant violated Plaintiff's rights under the Americans with Disabilities Act by failing to provide a reasonable accommodation to Plaintiff;
- B. That this Honorable Court award Plaintiff money reasonably calculated to compensate his for all monetary, and non-monetary damages sustained as a result of the discrimination by Defendant;
- C. That this Honorable Court award pre-judgment interest and costs;
- D. That this Honorable Court award reasonable attorney's fees and costs; and
- E. That this Honorable Court award such other and further relief as it may deem just and equitable.

## COUNT III

### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, et seq.
(Race Discrimination)

55. Plaintiff repeats and realleges Paragraphs 1-54, as though fully set forth herein, as Paragraphs 1-54 of Count III of this Complaint.

56. Plaintiff is African-American.

57. Plaintiff had an actual and/or perceived disability. He was diagnosed with PTSD and a neurological disorder, which substantially limited him in one or more daily life activates. As a result of being attacked and beaten by an inmate, Plaintiff was depressed, unable to

sleep, and experienced constant fear and anxiety while at work. Plaintiff had trouble focusing, communicating, and interacting with others in and outside of work.

58. Plaintiff met Defendant's legitimate expectations. He was not written up or counseled regarding his work performance.

59. Defendant discriminated against Plaintiff in one or more of the following ways:

    a. Refused to approve Plaintiff's request for treatment during Plaintiff's worker's compensation proceeding

    b. Forced Plaintiff to return to work full duty, outside of the recommendations of his treating physician

    c. Repeatedly denied Plaintiff's request for transitional work assignment

60. Similarly-situated, non-African-American employees were treated more favorably than Plaintiff, as they were not subject to the treatment set forth in Paragraph 59.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court find that Defendant CPS violated Plaintiff's rights under the Americans with Disabilities Act, and enter a judgment in favor of Plaintiff, making the following findings and granting the following relief:

   A. That this Honorable Court find that Defendant discriminated against Plaintiff on the basis of his race;

   B. That this Honorable Court award Plaintiff money reasonably calculated to compensate his for all monetary, and non-monetary damages sustained as a result of the discrimination by Defendant;

   C. That this Honorable Court award pre-judgment interest and costs;

   D. That this Honorable Court award reasonable attorney's fees and costs; and

E. That this Honorable Court award such other and further relief as it may deem just and equitable.

                        Respectfully submitted,

                        By: /s/ Jemelle D. Cunningham
                              Plaintiff's Attorney

Jemelle D. Cunningham
LAD LAW GROUP, P.C.
203 N. LaSalle Street, Suite 2100
Chicago, Illinois 60601
(312) 252-3085